[Civ. No. 4227. First Appellate District, Division Two.—August 4, 1922.]

CAROL MANNING, a Minor, etc., Respondent, v. THE CITY OF PASADENA (a Municipal Corporation), Appellant.

[1] MUNICIPAL CORPORATIONS—GATHERING AND SALE OF GARBAGE—GOVERNMENTAL FUNCTION—LIABILITY FOR NEGLIGENCE OF EMPLOYEES. A municipal corporation, in performing the function of collecting garbage and disposing of the same in a sanitary method, and in enacting an ordinance regulating the segregation and handling of garbage by its inhabitants and enforcing its provisions, is acting within its police powers; and the fact that, after its employees have gathered the garbage together and delivered it at the municipal incinerator, it sells the garbage, thereby recouping some of its expenses, does not convert the governmental function into a proprietary function, so as to render it liable for the negligent acts of its employees while engaged in gathering the garbage together.

APPEAL from a judgment of the Superior Court of Los Angeles County. L. H. Valentine, Judge. Reversed.

The facts are stated in the opinion of the court.

James H. Howard, City Attorney, and Roscoe R. Hess, Assistant City Attorney, for Appellant.

John L. Richardson, T. E. Parke and Anderson & Anderson for Respondent.

Municipal liability for tort committed in removing garbage, notes, Ann. Cas. 1916C, 242; Ann. Cas. 1918D, 834.

Distinction between public and private functions of municipal corporation in respect to liability for negligence, notes, 19 L. R. A. 452; 1 L. R. A. (N. S.) 665.

STURTEVANT, J.—The plaintiff, by his guardian, brought an action against the defendant, the city of Pasadena, to recover a judgment in damages for personal injuries which the plaintiff alleged he had suffered. Judgment went for the plaintiff, and the defendant has appealed.

The appellant makes several points, including the contention that the defendant, the city of Pasadena, is not liable for acts of negligence on the part of its employees occurring in the performance of a governmental duty, and that the alleged injuries occurred under such circumstances. The respondent concedes that the defendant would not be liable if the injuries occurred in the performance of a simple governmental duty, but contends that under the facts the alleged accident occurred while the city of Pasadena was engaged in a private venture.

The city of Pasadena is a municipal corporation organized under a freeholders' charter. Prior to the accident alleged the city had adopted an ordinance under and by virtue of which private persons were compelled to place in a receptacle the garbage of a household. It also provided that the expression "garbage" as used in the ordinance should mean all animal and vegetable refuse from kitchen and household waste that should have been prepared for or intended to be used as food or should have resulted from the preparation of food, and all animal and vegetable refuse from institutions where foodstuffs intended for human consumption should be handled commercially. The ordinance prohibited private individuals from collecting and disposing of such garbage. After the enactment of the ordinance the garbage in the defendant city was gathered by the employees and agents of the city. Under the directions of the head of the department the garbage was collected and delivered *at the municipal incinerator*. Prior to the accident in question the city had entered into a contract with A. B. Miller under and by virtue of which the city sold at $4.10 per ton the garbage so collected by it. Under that contract the purchaser agreed to remove the garbage *from the incinerator*. At about half-past 5 on the morning of the 28th of October, 1919, while it was still dark, municipal employees had driven their truck into Center Street for the purpose of collecting garbage. Near Euclid Avenue they had stopped the truck on the left-hand side of Center Street and facing

to the east. At that time the truck had two oil lamps, one on each side of the driver, but neither of those lamps was lighted. It had one large light near the windshield beside the driver focused down on the street. While at the time the truck stood in that position, the plaintiff drove west on Center Street riding on a motorcycle. He did not see the truck and collided therewith, hitting it between the middle of the radiator and outside of the north wheel. It is for the injuries sustained in that accident that this action is brought. There were three employees with the truck on the morning in question. They were engaged in collecting the garbage from the several garbage cans and hauling the same *to the incinerator*. The ordinance above mentioned was approved March 9, 1917. The contract with Miller was executed on the fifteenth day of January, 1918. The plaintiff offered a summary of expenditures and receipts of the refuse collection department from which it appears that for the fiscal years 1914–1920 the revenue collected by the department during each year or fraction thereof amounted to in round figures from $4,500 to $9,100, but that the expenditures were such that a balance was raised by tax levy which varied from $319 to $11,644. The totals for the same years showed total expenditures in the sum of $68,763.62, revenues $42,688.23, salvage and abatement expense $1,532.79, balance raised by tax levy $24,542.60. Excepting as the above facts may be evidence thereof, there is no evidence in the record that the city of Pasadena was conducting a garbage business for the purpose of making a profit. [1] However, the respondent takes the position that the foregoing facts show that the defendant city was at the time and under the circumstances delineated conducting the garbage business for a profit and that the defendant city is liable for the negligence of its servants in the performance of the duties cast upon them in gathering together the garbage, and in this behalf respondent cites McQuillin on Municipal Corporations, sections 2625, 2673; *Chicago* v. *Selz-Schwab & Co.,* 104 Ill. App. 376, 381; *Hourigan* v. *Norwich,* 77 Conn. 358, 365 [59 Atl. 487]; *Judson* v. *Borough,* 80 Conn. 384 [15 L. R. A. (N. S.) 91, 68 Atl. 999]. As we understand the appellant, its position is that without regard to what may be the rule in other states, the facts of this case do not show that at the time of the accident the

city of Pasadena was engaged in the garbage business for
profit, and therefore the respondent did not bring himself
within any exception to the above rule that cities, as sub-
ordinate agencies of the state, are intrusted with the exercise
of limited governmental powers for the benefit of the local
public in the performance of which, in this state, there being
no statutory provision to the contrary, they are not liable
for the negligence of their officers, agents, and servants
through whom they act.  The most that can be said in favor
of the respondent's position is that the evidence before the
trial court showed that in collecting the garbage the city of
Pasadena did not lose every dollar it expended, but that it
recouped some of its expenses by virtue of its sales.  The
fact that it collected some moneys to cover expenses did not
*ipso facto* render the city liable to the same rules that would
apply to private individuals.  In performing the function
of collecting garbage and disposing of the same in a sani-
tary method and in enacting the ordinance above mentioned
and enforcing its provisions the city was acting within its
police powers.  (*In re Zhizhuzza,* 147 Cal. 328 [81 Pac.
955].)  Conceding, without deciding, that when there-
after at the incinerator and after the garbage had been
gathered together, the city offered the same for sale and
did sell the same; that therein and thereby it was per-
forming a purely private business function, it suffices to
point out that the accident in question did not arise in the
performance of this last-mentioned function but did arise
in the performance of the above-mentioned function of gath-
ering the garbage together.  The fact that the city of Pasa-
dena sold the garbage after it had been collected did not
operate to convert a governmental function into a pro-
prietary function.  The question involved in this case in
this state is not an open one.  *Chapman* v. *State,* 104 Cal.
690 [43 Am. St. Rep. 158, 38 Pac. 457], and *Denning* v.
*State,* 123 Cal. 316 [55 Pac. 1000], seem to us to be deter-
minative of this litigation.  Both cases involved the acts of
the employees of the state harbor commissioners at the port
of San Francisco.  Those commissioners were acting under
the provisions of section 2504 of the Political Code.  They
performed many functions.  They acted as wharfingers.  As
such, they received and discharged freight.  In handling a

cargo of coal the commissioners allowed the same to break through the wharf and to be lost in San Francisco Bay. Speaking of the liability of the state, 104 Cal. 694, the court said: "A wharfinger is one who for hire receives merchandise on his wharf, either for the purpose of forwarding or for delivery to the consignee on such wharf, and the matters alleged in the complaint show a contract of the latter character, and the state is bound thereby to the same extent as a private person engaged in conducting the business of a wharfinger would be under a similar contract." The same public officers were furnished steam towboats. The boats were used during the daytime to tow, and to attend fires; at night-time the boats were used only to attend fires. The board was authorized "to fix and regulate from time to time the rates of dockage, wharfage, cranage, tolls and rents, and collect such amount of revenue therefrom as will enable the commissioners to perform the duties required of them by the act, . . . " In *Denning* v. *State, supra,* it appears that the plaintiff had been injured while placing a light at night in pursuance of his duty as a deck-hand on one of the boats operated by the harbor commission. At page 322 of 123 Cal., at page 1001 of 55 Pac., the court said: "The fact that the board is authorized or required to collect tolls and charges for dockage and wharfage to such extent 'as will enable the commissioners to discharge the duties required of them by the act' does not affect its character as a governmental agency." And again, at the bottom of page 322 of 123 Cal., page 1002 of 55 Pac., the court says: "But even if it were true that in so far as the duties of the board were those of a wharfinger, and that the liabilities of the state to its employees are or should be the same as that of a private corporation engaged in the same business, it does not follow that the state is or would be liable to the plaintiff, inasmuch as he was employed in a distinct branch of the service, viz., the protection against or extinguishment of fires, which, even in the case of municipal corporations, is uniformly held to be the exercise of a purely governmental function; and there is certainly as strong ground for distinguishing between the different functions of the board as there can be for distinguishing between the different functions of municipal corporations, in the exercise of some of which the cor-

poration is liable for negligence, whilst in others it is not."
In *Melvin* v. *State,* 121 Cal. 16 [53 Pac. 416], the facts were
much more in favor of the plaintiff than are the facts in the
instant case.    The legislature had provided for the creation
of a state agricultural society; for fairs to be conducted and
managed thereby; for the maintenance of exhibits thereat,
and for the collection of admission fees at the gate.    In
answering the same contention which this plaintiff makes
the court said: "It does not follow, however, that the so-
ciety is organized for gain.    It exists for the sole purpose
of promoting the public interest in the business of agricul-
ture and kindred objects.    It is an agency of the govern-
ment, and in no sense an organization for pecuniary profit
to the state."    Any doubt that may exist on the subject
seems to be entirely removed by the case entitled *Kellar* v.
*City of Los Angeles,* 179 Cal. 605 [178 Pac. 505].    The
city of Los Angeles had purchased and was maintaining
in the San Bernardino Mountains a park "for the purpose
of giving any children of said city, at certain prescribed
charges to be paid by said children to said city, a vacation
with care, board, and lodging at said camp."    The plain-
tiff had gone to the camp under an agreement by which, in
consideration of $3.75 per week to be paid by him, he was to
be received and cared for, boarded, and lodged for two
consecutive weeks.    While there he accidentally fell and
broke his arm.    The alleged negligence was the failure to
provide the necessary care and attention in view of his
injury, occasioning very serious results.    There, as here, it
was contended that the defendant was engaged in a busi-
ness enterprise.    The court held otherwise.    It held that the
city was in the due exercise of one of its governmental
powers and regarding the recoupment of expenses the court
said, 179 Cal. at page 610, 178 Pac. 507: "That a small
charge is made upon those children going to and staying at
the camp for the purpose of assisting in defraying the cost
of maintenance of such children while at the camp does not
change the situation."

The trial judge, acting upon the request of the plaintiff,
gave instructions 10, 11, and 12, embodying the contention
of the plaintiff, and it refused instructions 28 and 29, which
embodied the contention of the defendant.    It was prejudi-

cial error to give the instructions which were given and to refuse those which were refused.

The judgment is reversed.

Nourse, J., and Langdon, P. J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on October 2, 1922.

All the Justices present concurred.

Richards, J., *pro tem.*, was acting.