[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 98 
Mike Mays and others, representing the water customers of the town of Eclectic, filed an action seeking injunctive and declaratory relief from an Eclectic ordinance that required all water customers of the town of Eclectic to use Eclectic's garbage service. The trial court entered an order declaring that the ordinance and garbage service fee schedules adopted pursuant to the ordinance were void, because they violated the equal protection provisions of the Alabama and United States constitutions; the order also declared that Eclectic was using its garbage service fees to raise general revenue for the town, which, according to the trial court, is illegal under both Ala. Code 1975, § 11-47-135, and Martin v. City of Trussville,376 So.2d 1089 (Ala.Civ.App.), cert. denied, 376 So.2d 1095 (Ala. 1979). The trial court ordered a refund of the garbage service fees paid under the ordinance in the amount that the revenues raised by the garbage service fees exceeded the cost of operating the garbage service; the trial court made the judgment of liability final pursuant to Rule 54(b), A.R.Civ.P., though the court retained jurisdiction of the action for the purpose of entering orders to effectuate the judgment.
On December 1, 1980, the town council of Eclectic enacted Ordinance 34. The ordinance states:
 "Section 1. From and after the effective date of this ordinance, all water customers within the Town of Eclectic and its police jurisdiction shall be required to purchase garbage services from the Town of Eclectic and pay the effective monthly garbage fee imposed by the Town Council. The Town of Eclectic shall furnish garbage pickup services to all water customers within the territorial limits of the Town and its police jurisdiction from and after the effective date of this ordinance and all water customers of the Town of Eclectic shall be required to purchase said services and pay for same to the Town of Eclectic.
 "Section 2. The Town of Eclectic shall furnish written notice to all water customers within the Town territorial limits and its police jurisdiction thereof during the month of December, 1980 of the effective date of this ordinance and the terms thereof. Any water customer, residential, commercial, business, or manufacturing, that willfully and intentionally refuses to use and utilize the garbage services of the Town and pay the effective monthly garbage fee therefor shall be guilty of a misdemeanor and may be fined not less than One Dollar ($1.00) and not more than Five Hundred *Page 99 
Dollars ($500.00) and imprisoned in the Town jail for a term of not more than six (6) months or both.
 "Section 3. The effective date of this ordinance shall be January 1, 1981.[1]
 "Section 4. If any part, section or subdivision [of] this ordinance shall be held unconstitutional or invalid for any reason, such holding shall be construed [sic] to invalidate or impair the remainder of this ordinance, which shall continue in full force and effect notwithstanding such holding."
From the time the ordinance was enacted, some water customers vigorously objected to complying with it. There was evidence that the town responded by threatening to arrest those who did not pay their garbage fees and by threatening to turn off their water if they did not pay their garbage fees.
From August 1985 to April 1986 the Elmore County Health Department issued to three individuals "certificates of exception" pursuant to Ala. Code 1975, § 22-27-3(e), which allows individuals who meet the requirements of that provision to dispose of their own solid waste. Mayor Jesse Estes of Eclectic met with Cherie Williams of the Elmore County Health Department, and he requested that she issue no more certificates of exemption. Williams agreed to the mayor's request, although, after this lawsuit was filed, the health department granted some of the plaintiffs' requests for certificates of exception.
Mike Mays and others filed this action on August 4, 1986. Their complaint, as amended, named as defendants the town of Eclectic, Jesse Estes in his official capacity as mayor of Eclectic, and Cherie Williams, Joe Scott, and Bobby Bryan as employees of the Elmore County Health Department. The complaint, alleging violations of 42 U.S.C. § 1983 and various state laws, requested that the action be maintained as a class action pursuant to Rule 23, A.R.Civ.P., with the class being defined as "persons who are water customers of the town of Eclectic or who have in the past been water customers of the town of Eclectic"; that Ordinance 34 be declared void for violating the equal protection and due process clauses of the United States and Alabama constitutions; that Eclectic be enjoined from enforcing Ordinance 34; that the defendants reimburse the plaintiffs' class for money collected pursuant to Ordinance 34; that the employees of the Elmore County Health Department be required to grant certificates of exception to members of the plaintiffs' class who qualified for the exception of Ala. Code 1975, § 22-27-3(e); and, finally, that the court award attorney fees and other relief that the plaintiffs' class was entitled to receive.
In April 1987, the trial court entered an order granting class certification pursuant to Rule 23, A.R.Civ.P., with the class being defined as "those persons who are water customers of the town of Eclectic or who have, at any time since January 1, 1981, been customers of the town of Eclectic." The order also preliminarily declared valid that portion of Ordinance 34 that imposes fines and imprisonment for refusing to use Eclectic's garbage service. The order noted that Alabama law gave Eclectic the right to establish a garbage service and that with that right went the right to enforce the use of the garbage service. The court stated that under Ala. Code 1975, § 11-45-1, Eclectic's ordinance was valid to the extent that it provided that individuals who refused to use the service could be sentenced to jail for as long as 6 months or fined up to $500 or both. However, regarding the portion of the ordinance that provided that a person who did not pay the garbage service fees could be fined up to $500 and imprisoned in the town jail for as long as 6 months, the trial court ruled in favor of the water customers and declared that that portion of Ordinance 34 was inconsistent with state law. The trial court noted that Ala. Code 1975, § 22-27-5(e), gives the specific remedy for what a municipality *Page 100 
may do in the event that the garbage service fee is not paid.
In September 1987 the trial court entered a summary judgment for the water customers, declaring that plaintiffs who had obtained a certificate of exception pursuant to § 22-27-3(e) were not subject to Ordinance 34 and its related fees. The next week the trial court held a final hearing. On the morning the final hearing began, the trial court, on the plaintiffs' motion, recertified the class under Rule 23(b)(1) and 23(b)(2), A.R.Civ.P., with the same definition for the class. Also, before the hearing began, the water customers and the Elmore County Health Department reached a settlement and filed a motion for consent judgment, which the trial court later granted. After the final hearing, the trial court granted most of the relief that the water customers requested. The order stated that these two issues were presented to the court:
 "1. Whether the garbage collection fees of the Town of Eclectic are in reality illegal taxes?
 "2. Whether ordinance thirty-four of the Town of Eclectic violates the equal protection clauses of the United States and Alabama Constitutions?"
The trial court made these pertinent findings of fact:
 "2. The Town of Eclectic has a garbage ordinance (Ordinance 34) which requires all persons who are water customers of the Town of Eclectic to subscribe to the garbage service and to pay a monthly fee to the Town of Eclectic. Some of these water customers reside outside the corporate limits of the Town but within the Police Jurisdiction. Persons who are not water customers do not have to use the garbage service although non-water customers may voluntarily make use of the garbage service by paying the fee. Those persons who 'opt in' and voluntarily use the garbage service are billed by the Town Clerk whereas the required users are billed by the Water Board of the Town of Eclectic.
". . . .
 "4. At all times relevant to this proceeding, the monies collected from the garbage service have been paid into the general fund of the Town of Eclectic. At no time have these garbage service monies been separated or segregated into any separate account.
 "5. At all times relevant to this proceeding, the expenses of the police and fire departments and other governmental expenditures have been paid from the general fund of the Town of Eclectic.
 "6. No money raised by the garbage service has been set aside for replacing capital equipment used in providing the garbage service. Any serious discussion concerning replacement of capital equipment began after the filing of this lawsuit.
 "7. The Town of Eclectic was not aware of its financial position relative to the garbage service (i.e., whether it was making or losing money) until an analysis was performed. This analysis was performed after this lawsuit was filed.
 "8. For the fiscal year ending September 30, 1983, the revenues of the Town of Eclectic's garbage service were less than the expenditures, resulting in a net loss of $1,609.01.
 "9. For the fiscal year ending September 30, 1984, the revenues of the Town of Eclectic's garbage service exceeded the expenses of providing that service by $2,582.89, and at least some portion of that money has apparently been wrongfully or illegally spent by the Town of Eclectic on other municipal functions.
 "10. For the fiscal year ending September 30, 1985, the revenues of the Town of Eclectic's garbage service exceeded the expenses of providing that service by $7,154.81, and at least some portion of that money has apparently been wrongfully or illegally spent by the Town of Eclectic on other municipal functions.
 "11. For the fiscal year ending September 30, 1986, the revenues of the Town of Eclectic's garbage service exceeded the expenses of providing that *Page 101 
service by $22,301.12 and some of that money has apparently been wrongfully or illegally spent by the Town of Eclectic on other municipal functions.
 "12. Based upon the projections contained in Defendant's exhibit 1 and altered by testimony from the Town Clerk, for the fiscal year ending September 30, 1987, the revenues of the Town of Eclectic's garbage service exceeded the expenses of providing that service by $9,655.71. Some of that money has apparently been wrongfully or illegally spent by the Town of Eclectic on other municipal functions."
Based on these factual findings, the trial court held:
 "13. The Town of Eclectic's garbage service fees have been and are being used to provide general revenue for the town. Consequently, the garbage service fees are in reality a form of tax. Section 11-47-135, Code of Alabama, 1975, prohibits the use of fees collected for solid waste disposal for any other purpose than those directly associated with solid waste disposal. In Martin v. City of Trussville, 376 So.2d 1089 (Ala.Civ.App. 1979), the Court recognized that 'the city could not tax for the collection of garbage.'
". . . .
 "17. In respect to the equal protection issue, the Court finds that the purpose of the garbage collection ordinance is to promote public health by requiring a sanitary means of garbage disposal. The differing classification contained in Ordinance 34 between persons who are Eclectic Water System users and those who are not, does not bear a fair and substantial relationship to the object of Ordinance 34; nor is there a rational basis in this classification since non-water users are using and being billed for the garbage service.
 "18. Ordinance 34 is contrary to the equal protection clauses of the United States and Alabama Constitutions."
Based on its factual findings and its holdings, the trial court, in its summary judgment order, both declared that Ordinance 34 and the fee schedules adopted pursuant to the ordinance were void and enjoined Eclectic from enforcing the ordinance. The trial court ordered Eclectic to refund to the plaintiffs' class an amount equal to the difference between the revenues collected under the ordinance and the actual expenses Eclectic incurred in operating the garbage collection service; the refund ordered by the trial court thus reflected the amount of the money collected pursuant to the ordinance that was used for the general revenue of the town, rather than for the garbage collection service. The court further directed that attorney fees should be "taxed against the common fund" created by the refund it ordered and denied the plaintiffs' request for prejudgment interest; the Town of Eclectic and its mayor appeal from the substantive portions of the judgment, and the water customers cross-appeal from these latter two rulings.
 I.
Eclectic argues that the trial court erred by ruling that a portion of Ordinance 34 was inconsistent with state law; the pertinent portion provided that a person who does not pay the garbage service fees could be fined as much as $500 and imprisoned in the town jail for as long as six months.
The statutes giving Eclectic authority to pass Ordinance 34 are Ala. Code 1975, § 11-47-135, and § 22-27-1 et seq., Alabama's Solid Waste Disposal Act. Section 22-27-5(e) expressly addresses "nonpayment of fees." The statute provides:
 ". . . [I]f the fees, charges, or rates for the services furnished . . . shall not be paid within 30 days after the same shall become due and payable, [the] municipality may, at the expiration of such 30 day period, suspend such services or may proceed to recover the amount of any such delinquency with interest in a civil action, or both."
The statute does not permit either the fines or the imprisonment that Ordinance 34 would impose. A municipal corporation shall not pass any laws inconsistent with the general laws of this state. Ala. Const., *Page 102 
Art. IV, § 89. Accordingly, the portion of Ordinance 34 that imposes fines and imprisonment for not paying the garbage service fees is inconsistent with state law, and the trial court did not err in striking that part of the ordinance.
 II.
Eclectic argues that the trial court erred when it held that individuals with certificates of exception granted pursuant to Ala. Code 1975, § 22-27-3(e), were not subject to Ordinance 34. Section 22-27-3(e) provides: "A household, business, industry or any property owner may store, haul, and dispose of his own solid wastes on his land or otherwise, provided such storage, haulage, or disposal, is accomplished pursuant to a certificate of exception as provided in this subsection."
Considering this clear statutory mandate, Eclectic's argument fails; the trial court did not err in holding that individuals with certificates of exception granted pursuant to § 22-27-3(e) were not subject to Ordinance 34.
 III.
Eclectic contends that the trial court erred when it certified this action as a class action, Rule 23(b)(1) and (2), A.R.Civ.P., because, it argues, the water customers did not meet the requirements necessary to sustain a class action under 23(b)(1) or (2), and because any individuals whovoluntarily paid for the garbage service are not proper members of the class.
The trial court certified the class as "persons who are water customers of the town of Eclectic or who in the past have been water customers of the town of Eclectic." The court specifically found that the class was so numerous that joinder of all members was impracticable; the evidence before the trial court indicated that the garbage service at that time served 600 customers. The trial court further held that "there are questions of law or fact common to the class [and] that the claims or defenses of the representative parties are typical of the claims of the class"; undeniably, there were common issues of law and fact concerning whether the revenues collected from the garbage service fees exceeded the costs of operating the service and whether the town had illegally spent the revenue from the garbage service fees in other municipal departments. The trial court entered further findings to support its certification of the class, and none of the findings constitutes reversible error.
Further challenging the certification of the class, Eclectic, citing 72 Am.Jur.2d State and Local Taxation §§ 1064, 1082 (1974), and one inapposite Alabama case, National Bank of Boazv. Marshall County, 229 Ala. 369, 157 So. 444 (1934), argues that under Alabama law only one member of the certified class, Mike Mays, is entitled to the refund the trial court ordered, because, it says, the other class members paid the "tax" voluntarily. This argument requires Eclectic to take the self-contradictory position both that the garbage service fees were not a general revenue tax and that they were a tax and so any refund could be obtained only through the proper procedures for obtaining refunds of taxes erroneously paid. Because the excessive amounts were collected under the guise of their being a service fee, there obviously can be no statutory procedure regarding refunds of taxes that would be applicable. Which tax refund procedures would apply? Therefore, Eclectic's arguments, that the water customers who did not make known the involuntariness of their payments cannot be members of the class and cannot receive refunds, have no merit.
Certifying an action as a class action is a discretionary decision of the trial court. First Alabama Bank of Montgomery,N.A. v. Martin, 381 So.2d 32, 35 (Ala. 1980). A class action is a permissible vehicle to restrain the enforcement of an allegedly invalid tax, as the trial court found Ordinance 34 to be, and to recover any taxes illegally paid. Eagerton v.Williams, 433 So.2d 436, 449 (Ala. 1983); Thorn v. JeffersonCounty, 375 So.2d 780, 788 (Ala. 1979).
The trial court did not commit reversible error by certifying this action as a class action. *Page 103 
 IV.
The trial court held that "the Town of Eclectic's garbage service fees have been and are being used to provide general revenue for the town. Consequently, the garbage service fees are in reality a form of tax." Eclectic contends that this holding constitutes reversible error.
Section 11-47-135, Ala. Code 1975, authorizes municipalities to establish a garbage collection and disposal system and "to fix and collect such reasonable fees as may be necessary to carry out the provisions of this section." Sections 22-27-1
through -7, Ala. Code 1975, also authorize municipalities to establish and maintain a solid waste disposal system and further provide that a municipality "may establish fees,charges and rates and may collect and disburse funds within cooperating areas or districts, inside or outside the corporate limits of municipalities . . . for the specific purpose ofadministering this article and providing and operating a solidwaste program." Ala. Code 1975, § 22-27-5(a) (emphasis supplied). The Court of Civil Appeals in Martin v. City ofTrussville, 376 So.2d 1089 (Ala.Civ.App.), cert. denied,376 So.2d 1095 (Ala. 1979), addressed these provisions of §11-47-135 and § 22-27-5. The court in Martin indicated that the assessments permitted under the statutes were service charges imposed to cover the cost of providing the garbage services,not taxes. Considering the clear language of the two statutes mentioned, as well as the clear language of the remainder of the Alabama Solid Waste Disposal Act, we agree with Martin that the assessments permitted under § 11-47-135 and § 22-27-5 are service charges imposed to cover the cost of providing garbage services, not taxes. Accordingly, if the funds Eclectic collected pursuant to Ordinance 34 are taxes, not service fees imposed to cover the cost of providing garbage services, then the water customers are entitled to a refund to the extent that the assessment under Ordinance 34 was a tax.
The water customers offered considerable evidence indicating that the fees charged under Ordinance 34 were not service charges, but, instead, were taxes. They proceeded to prove their case by showing that Eclectic made no effort to relate the cost of the garbage service to the revenues generated by Ordinance 34 and that, accordingly, the garbage service fees were not merely service charges. The water customers then offered evidence indicating that the garbage service fees were used to provide general revenue for the town and that revenues from the garbage service fees were spent in municipal departments other than the garbage department; this evidence, the water customers argue, indicates that the fees charged pursuant to Ordinance 34 were, in reality, taxes.
Glenda Smith, Eclectic's town clerk, testified that, before the water customers filed this lawsuit, Eclectic had no idea whether it was making money or losing money on the garbage service. In response to the water customers' requests for admissions, the town admitted:
 "10. The Town of Eclectic made no effort to anticipate the cost of providing the garbage pickup service prior to the time that it raised garbage rates effective August 1, 1985.
 "11. The Town of Eclectic made no study to determine the cost of providing the garbage pickup service prior to the time that it raised the rates for the garbage pickup service effective August 1, 1985."
Eclectic contends that its lack of efforts to relate revenues generated by the garbage service fees to the expenses of the garbage system is irrelevant, if the fee structure for the garbage service later proves to be reasonable. While we do not currently address the premise in this argument that the garbage rates turned out to be reasonable, we note, as we stated earlier, that garbage service fees should be based on the cost of providing the garbage service. To hold as Eclectic argues would, at a practical level, allow a municipality to arbitrarily and capriciously charge for its garbage services, limited only by its ability later on to devise ways to spend the revenues generated, if the service fee is challenged. *Page 104 
Thus, allowing a municipality's rationalizations for its fee structure, first conceived after the imposition of the fee, to sustain the fee structure would contravene the policy of permitting the municipality to charge only for the reasonable costs of the service. Accordingly, Eclectic's argument fails, because, before imposing the garbage service fee, Eclectic should have related the fee to the cost of providing the service.
The water customers, attempting to prove further their contention that the garbage service fees were, in reality, taxes, offered another admission by the town; in response to the water customers' requests for admissions, Eclectic admitted that the purpose of the 1985 garbage fee increase was to provide general revenue for the town.[2]
In addition to presenting Eclectic's admission that at least one of the garbage rate increases was to provide general revenue for the town, the water customers presented evidence that Eclectic spent the funds raised by the garbage fees in other municipal departments. According to charts prepared by Glenn Branum, Eclectic's accountant, for Eclectic's fiscal years 1983-1987, the garbage service fees generated by Ordinance 34 exceeded the expenses of the garbage service. During questioning by the water customers' lawyer, Eclectic's town clerk, Glenda Smith, testified that the excess revenues had been spent and, furthermore, spent in departments other than the garbage department:
 "Q. And so if the plaintiffs' Exhibit 33 shows that for the fiscal year, September 30th, 1985, it was an excess of $7,154.00 of the garbage revenues over expenditures, then that money has been spent in other departments; hasn't it?
"A. The money has been spent.
"Q. Okay.
"A. Period.
 "Q. And if it shows that for the fiscal year ending September 30th, 1986, there was an excess of $22,000.00 in the garbage revenues over expenditures, that money has been spent in other departments; hasn't it?
"A. Yes.
"Q. Okay.
 "But there has been excess money collected by the garbage service over the years. It is not in any bank account anywhere; is it?
 "[Eclectic's lawyer]: Your Honor, I object to this.
"THE COURT: Overruled.
"Q. It's not in any bank account anywhere; is it?
"A. No.
"Q. It's gone?
"A. It's gone."
The water customers produced additional evidence to establish that revenue from the garbage service fees was spent in other departments. Two witnesses testified that Eclectic's mayor said that the money raised by the garbage service fees was used to fund other municipal departments. Furthermore, the evidence indicated that, during a 1986 town council meeting, town council member Donald Strickland stated: "To the people in the police jurisdiction we give police and fire protection and the only way we have to pay for them is the water and garbage pickup. . . . [I]f the people would only think about it and realize that the garbage fees pay for the police and fire departments, they wouldn't object to it." Also at a town council meeting during 1986, Phillip Venable, another Eclectic town council member, stated, "Since the [garbage] fee supports the police and fire departments . . ., this ten dollars is a small amount to pay for police and fire protection."
Confronted with all the accumulated evidence that Eclectic's garbage service fee was in reality a tax, Eclectic states that it had been accumulating income over the past several years, planning on purchasing or replacing garbage equipment, and that, accordingly, the garbage service fee is a *Page 105 
reasonable service charge, not a tax.[3] Eclectic further argues that "the mere possibility that the town may misappropriate the garbage fee revenues in the future does not give rise to a present cause of action."
As we have already discussed, the water customers satisfactorily proved that the town had already spentexcess money from the garbage service fees on departments otherthan the garbage department. This case does not involve the possible, future misappropriation of funds, to which Eclectic refers; there is evidence that Eclectic deliberately, over the course of several years, systematically spent the funds from the garbage service fees in departments other than the garbage department.
Eclectic argues that, considering the replacement cost and depreciation costs of the garbage equipment, the garbage service fee was reasonable, despite all the evidence the water customers presented. Undeniably, municipalities may consider, indeed, in being financially prudent, must consider, the depreciation and replacement cost of their garbage equipment. Eclectic, however, in response to the water customers' request for admissions, admitted that "no money raised by the garbage pickup service has been set aside for the replacement of equipment used in the garbage pickup service." Also, the trial court found that "any serious discussions concerning replacement of capital equipment began after the filing of this lawsuit."[4] The trial court's findings are fully supported by the record. We further note that, in this instance, we are not convinced that, even if the replacement and depreciation costs were considered, Eclectic's argument would prevail.
Accordingly, the trial court's holding that the garbage service fee was in reality a tax is not reversible error.
 V.
Eclectic contends that the trial court committed reversible error when it held that Ordinance 34 violated the equal protection provisions of the Alabama and United States Constitutions.
The ordinance distinguishes between two classes of persons: persons who use Eclectic's water system and persons who do not use Eclectic's water system. We must determine whether the distinction between those who use the Eclectic water system and those who do not is a legal basis for determining, as Ordinance 34 does, who is required to use Eclectic's garbage services. In resolving this issue concerning Ordinance 34, we follow this analysis:
 " '[Eclectic] must proceed upon a rational basis and may not resort to a classification that is palpably arbitrary. The rule often has been stated to be that the classification "must rest upon some ground of difference having a fair and substantial relation to the object of the legislation." ' "
Robert Burton Associates, Ltd. v. Eagerton, 432 So.2d 1267,1268 (Ala. 1983) (quoting from Allied Stores of Ohio v. Bowers,358 U.S. 522, 527, 79 S.Ct. 437, 441, 3 L.Ed.2d 480 (1959)).
The trial court found that the purpose of the ordinance was to promote public health by requiring a sanitary means of garbage disposal. The record supports this conclusion; furthermore, we note that it is a reasonable conclusion, particularly in light of Ivory v. City of Montgomery,35 Ala. App. 631, 51 So.2d 559 (1951), in which the court held that gathering and disposing of garbage is a health measure for the benefit of the general public. Accordingly, the dispositive issue before this Court is whether the classification between water customers and those who are not water customers rests upon some difference that has a fair *Page 106 
and substantial relationship to the purpose of the ordinance, promoting public health by requiring a sanitary means of garbage disposal. Robert Burton Associates, supra at 1268.
The town argues that it is necessary to require all of the water customers to use the garbage collection system in order to produce sufficient revenue to fund the garbage collection system. This argument does not explain, or even address, how the classification difference between water and non-water customers bears a substantial relationship to the purpose of requiring a sanitary means of garbage disposal. The town never argued that persons who are not water customers have less garbage than water customers. As a matter of fact, by exempting persons who do not use the Eclectic water system from the mandatory effect of the ordinance, the town frustrates the very purpose of the ordinance, which was to require sanitary garbage disposal. Indeed, Glenda Smith testified that health considerations would be best served if all persons were required to use the garbage service.
Eclectic argues that it was not "economically feasible for the town to assume the responsibility of billing for the garbage services." To understand this argument requires some background information. Though Ordinance 34 applies only to persons who use Eclectic's water system, others within the city and the police jurisdiction may choose to use the garbage service. Water customers are billed for their garbage services by the water board; persons who are not water customers but who do use the garbage service are billed by the town clerk.
Eclectic's argument fails, because this argument, like the last one, does not explain, or even address, how the classification difference between water customers and persons who are not water customers bears a fair and substantial relationship to the object of the ordinance, promoting public health by requiring a sanitary means of garbage disposal. At best, Eclectic's argument justifies its system of billing for garbage service fees.
We find no substantial distinction, making one class different from the other in relation to the object of Ordinance 34, between persons who are water customers of Eclectic and persons who do not use Eclectic's water system. Accordingly, the trial court did not commit reversible error when it ruled that Ordinance 34 violated the equal protection provisions of both the Alabama and the United States Constitutions.
 VI.
Eclectic argues that the trial court erred in three evidentiary rulings. First, Eclectic contends that the trial court erred by granting the water customers' motion in limine, made immediately prior to the final hearing, that prohibited Eclectic from offering evidence of an anticipated increase in the costs of dumping garbage. When the trial court granted the motion in limine, Eclectic offered to prove that Steve Martin, the Elmore County engineer, would have testified that the county charged the town less to use the county landfill than it actually costs to make the landfill available to Eclectic and that Martin had recommended to the county commission that the commission increase the fee charged to Eclectic for dumping the garbage. This evidence, Eclectic argues, explains the accumulated excess of revenues from the garbage service fees, because the excess revenues were in part a reserve fund to provide for emergencies and contingencies, such as the one Martin would have described, where the county's increased charge to Eclectic would create an increased cost in providing the garbage service.
While such a reserve fund might be permissible, the evidence at trial established that the town had not maintained a reserve fund. As the city clerk testified repeatedly, all revenue from the garbage service fees had been spent. Furthermore, Eclectic never stated to the trial court the purpose for which it was offering the evidence. Finally, the evidence before the trial court at the time it granted the motion in limine indicated that Martin's request of the Elmore County Commission did not occur *Page 107 
until August 1987, one month before the final hearing and two years after the latest increase in garbage service fees. Considering that Eclectic never offered any reason for the admission of the evidence and that the evidence before the trial court at the hearing on the motion in limine tended to impeach this evidence, any error committed by the trial court was harmless.
Eclectic argues that the trial court erred in allowing the water customers to introduce testimony concerning a proposal to franchise the garbage collection system to a private company. Because the court did not base any factual finding, or any holding, or any relief on this evidence, any error committed by the court was harmless.
Eclectic argues that the trial court erred by excluding testimony of Glenda Smith concerning the cost of Eclectic's liability insurance, because a portion of the general liability insurance covers garbage collection. The trial court allowed Smith to testify that the total premium for the town's liability insurance was $15,000 and that she estimated that the garbage collection expense at city hall amounted to ten percent of the total utilities expense. However, the trial court sustained the water customers' objection to Eclectic's question: "And ten percent of $15,000 would be $1,500?" Eclectic then asked Smith whether she had an opinion as to what a fair amount of the general liability insurance premium would be to allocate to the garbage system. The trial court allowed the water customers to conduct a voir dire of Smith to determine whether she had a basis from which to answer the question. On voir dire Smith testified that she had never worked in underwriting; that she had no experience in determining premiums for insurance policies; and that she had no documents showing what proportion of the liability policy was attributable to the garbage service.
Eclectic contends that by refusing to allow Smith to testify about what portion of the premium was allocable to the garbage service, the trial court effectively reversed the burden of proof in the case. By the time Eclectic asked Smith these questions, the water customers had already produced a prima facie case that the garbage service fees were, in reality, taxes; at best, if Smith had had a basis from which to answer the question, the testimony would have served as rebuttal. Considering that Smith had no basis from which to answer the question and that the trial court allowed testimony concerning the general liability premium, though not the exact amount allocable to the garbage service, if the trial court did commit error, it was harmless.
 VII.
The water customers, on cross-appeal, argue that they are entitled to prejudgment interest. The nature of this action does not allow an award of prejudgment interest. See, e.g.Lapreyrouse Grain Corp. v. Tallant, 439 So.2d 105, 111-12
(1983).
 VIII.
The water customers, on cross-appeal, argue that the trial court erred when it awarded attorney fees from the refund, rather than taxing the fees against the defendants. CitingCanterbury Nursing Home, Inc. v. Alabama State Health Planning Development Agency, 425 So.2d 1103 (Ala. 1983), the water customers argue that because their action contains a 42 U.S.C. § 1983
claim, they are entitled to attorney fees. Indeed, in Alabama attorney fees can be awarded when they are authorized by statute, such as 42 U.S.C. § 1983 and 1988, Eagerton v.Williams, 433 So.2d 436, 451 (Ala. 1983), but attorney fees can also be taxed against the common fund created by an award in a class action. Eagerton v. Williams, supra.
Considering both that promoting the fiscal solvency of municipalities is a public policy concern that we choose to support to the extent reasonably and legally possible, and that Alabama law permits the taxing of attorney fees against the common fund in this situation, we hold that the trial court committed no reversible error when it taxed the attorney fees against the common fund. *Page 108 
 IX.
The trial court, confronted with a complex case, entered a well-reasoned order. None of the issues raised in the appeal or the cross-appeal presents reversible error. The judgment is due to be affirmed.
AFFIRMED.
MADDOX, JONES, SHORES, ADAMS, STEAGALL and KENNEDY, JJ., concur.
HOUSTON, J., concurs in the result.
[1] The garbage rates for residential service were initially set at $3.50 per month, and they were increased to $6 per month effective January 1, 1982, to $7 per month effective January 1, 1984, and to $10 per month effective August 1, 1985.
[2] The water customers further proved that Eclectic deposited the funds from the garbage service fee into the town's general fund bank account; however, the choice of which town bank account to deposit the funds into is largely an accounting choice, properly left to Eclectic's discretion.
[3] The town has a $65,000 certificate of deposit that was purchased with revenues from the sale of a building; the certificate of deposit was not purchased with revenues from the garbage service fees.
[4] Besides the town's own admission that it had not set aside any money for the purchase of capital equipment, the evidence before the trial court could reasonably be interpreted to indicate that in September 1987, less than two weeks prior to trial, Eclectic first conceived the idea of purchasing $90,000 worth of new equipment.